

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
Jul 29, 2026

IN RE:

BOBBY D. WILLIAMS and CYNTHIA L. WILLIAMS,

         Debtors.

Case No. 25-10361-T
Chapter 13

### ORDER DENYING CONFIRMATION OF DEBTORS' FIFTH AMENDED CHAPTER 13 PLAN

Before the Court is Debtors' Fifth Amended Chapter 13 Plan (the "Plan"),[1] filed by Debtors Bobby D. Williams and Cynthia L. Williams (the "Debtors"); Creditor's Objection to Confirmation of Debtors' Fifth Amended Chapter 13 Plan,[2] filed by Community Bank Bristow (the "Bank"); Trustee's Objection to Confirmation of Plan,[3] filed by the Standing Chapter 13 Trustee, Lonnie D. Eck (the "Trustee"); and the Trustee's Amended and Supplemented Objection to Confirmation of Plan.[4] The Court held a telephonic hearing on the matter on July 21, 2026 (the "Hearing"), after which the Court took the confirmation of Debtors' Plan under advisement.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b),[5] and venue is proper pursuant to 28 U.S.C. § 1408. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). Confirmation of plans is a "core" proceeding as that term is defined in 28 U.S.C. § 157(b)(2)(L).

---

[1] ECF No. 63.

[2] ECF No. 69.

[3] ECF No. 73.

[4] ECF No. 76.

[5] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

**Background**

On March 23, 2025, Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code.[6] It appears from the Schedules that property located at 36041 W. 271st St. South, Bristow, OK 74010 (the "Bristow Property") serves as Debtors' principal residence. Debtors list the Bristow Property as having a current value of $380,000.00,[7] with a secured claim of $198,085.00.[8] On May 23, 2025, the Bank filed its Amended Proof of Claim No. 4-2 (the "Claim") in the amount of $207,805.19, with interest due at the rate of 6.50% per year. The Claim indicates that it is fully secured. It also includes a Mortgage Proof of Claim Attachment which indicates that the principal due is $185,032.92, with accrued interest in the amount of $16,150.88, and interest accruing at a rate of 6.50% per year thereon from March 24, 2025, fees in the amount of $3,581.60, and escrow deficiency in the amount of $4,459.62.[9]

On May 12, 2026, Debtors filed their fifth amended confirmation plan, which proposes making mortgage payments to the Bank through the Trustee of $2,219.84 per month for sixty months.[10] The Plan also proposes making payments towards the arrearage to the Bank through the Trustee of $400.00 per month for a period of twenty-four months, then $481.26 per month for an additional thirty-six months. Both the Bank and the Trustee filed objections to confirmation of the Plan.[11] The Bank objects to the Plan pursuant to §§ 1322(b)(2), 1325(a)(5), and 1326(a)(1)(C), arguing that the Plan as proposed "fails to pay [the Bank] the full amount of its total claim[.]"[12] According to the Bank's objection, Debtors executed and delivered a promissory note to the Bank

---

[6] ECF No. 1.
[7] *Id.* at 10.
[8] *Id.* at 17.
[9] *See* Claim No. 4-2.
[10] ECF No. 63.
[11] ECF Nos. 69, 73, 76.
[12] ECF No. 69 at 1.

in the principal sum of $238,500.00, with interest accruing at a rate of 6.50% on the unpaid balance.[13] The loan maturity date was originally August 1, 2023, and later extended by agreement to August 1, 2028. The Plan as proposed would span sixty months and thus would not conclude until approximately March 2030. Debtors' failure to pay the Bank's claim in full by the maturity date of August 1, 2028, would violate §§ 1322(b)(2) and 1325(a)(5). The Trustee posits that, for the Plan to comply with §§ 1322(b)(2) and 1325(a)(5)(B), Debtors would be required to make monthly payments in excess of $4,000.00 for the full term of the Plan.[14]

At the Hearing, only Debtors and the Trustee offered oral arguments, as the Bank did not appear. Debtors asserted that, pursuant to § 1325(a)(5)(B), the Court could confirm the Plan. In response, the Trustee argued that, because the Bank's claim is secured by a security interest in real property that is Debtors' principal residence, the Plan violates the "anti-modification" provision of § 1322(b)(2) and cannot be confirmed.

### Discussion

Chapter 13 of the Bankruptcy Code provides debtors with an opportunity to retain personal property under a proposed plan while repaying debts over a three- to five-year period.[15] To benefit from said opportunity, a debtor must propose and obtain a court-approved plan and make all payments pursuant to the plan to earn "the right to a discharge and 'fresh start' free from most

---

[13] *Id.*

[14] ECF No. 76 at 3.

[15] *See In re Pino*, 657 B.R. 264, 269 (10th Cir. BAP 2024) (citations omitted); *In re Melendez*, 597 B.R. 647, 649 (Bankr. D. Colo. 2019) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015)).

prior financial burdens."[16] To receive court approval, "a proposed Chapter 13 plan must contain all provisions required by § 1322, and meet all requirements of § 1325(a)."[17]

Relevant here is § 1322(b)(2), commonly referred to as the "anti-modification" provision. Section 1322(b)(2) states that, subject to subsections (a) and (c), a confirmation plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .*"[18] Its primary purpose "is to encourage the flow of capital into the home lending market[]" and is therefore "meant to protect home mortgage lenders rather than home owners."[19] In that spirit, "[t]he Supreme Court has interpreted this provision to exclude mortgages against a debtor's principal residence from the general rule permitting modification of secured claims in Chapter 13 proceedings."[20]

There is, however, a narrow exception to the anti-modification provision of § 1322(b)(2). Pursuant to § 1322(c)(2), a debtor may modify "mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the chapter 13 plan is due by proposing in the plan to pay the mortgage creditor in full over the course of the bankruptcy."[21] A common example is "a mortgage debt [which] includes a 'balloon' payment that

---

[16] *In re Melendez*, 597 B.R. at 649. *See In re Plese*, 661 B.R. 143, 145 (Bankr. D. Colo. 2024) (*Hamilton v. Lanning*, 560 U.S. 505, 508 (2010)).

[17] *In re Liehr*, 439 B.R. 179, 183 (10th Cir. BAP 2010). *See In re Kofford*, No. 12-29134, 2012 WL 6042861, at *3 (Bankr. D. Utah Dec. 4, 2012).

[18] 11 U.S.C. § 1322(b)(2) (emphasis added).

[19] *Huriega v. Nationstar Mortg. (In re Huriega)*, No. 13-05058, 2015 WL 4130866, at *4 (Bankr. W.D. Tex. June 1, 2015) (citation omitted).

[20] *In re Paschen*, 296 F.3d 1203, 1206 (11th Cir. 2002) (citing *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 331-32 (1993)).

[21] *In re Sanders*, 521 B.R. 739, 744-45 (Bankr. D.S.C. 2014) (citing *In re Brown*, 428 B.R. 672, 675 (Bankr. D.S.C. 2010)). *See Hurlburt v. Black*, 925 F.3d 154, 165 (4th Cir. 2019) ("All that Section 1322(c)(2) does is exempt a narrow class of homestead mortgages—those mortgages for which the final payment is due prior to a debtor's last payment on a repayment plan—from Section 1322(b)(2)'s reach.").

becomes due during the term of the plan[.]"[22] However, modifications under § 1322(c)(2) must nevertheless comply with the requirements of § 1325(a)(5).[23]

Section 1325(a)(5) outlines the manner in which "allowed secured claims"[24] may be modified.[25] A court can confirm a plan's proposed treatment of an allowed secured claim if one of three conditions is met: (1) "[t]he secured creditor accepts the plan"; (2) "the debtor surrenders the property securing the claim to the creditor"; or (3) "the debtor invokes the so-called 'cram down' power."[26] Under the third option, which Debtors attempt to rely on here, "the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, . . . and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim . . . ."[27]

The Bank's claim here is fully secured by a security interest in Debtors' principal residence, the value of which exceeds the amount of the Claim. Thus, the anti-modification provision prohibits Debtors from modifying the Claim. But, because the Claim is based on a short-term home

---

[22] *White v. Newrez LLC (In re White)*, 641 B.R. 717, 725 (Bankr. S.D. Ga. 2022) (quoting Adam M. Goodman, Paul W. Bonapfel, W. Homer Drake Jr., *Chapter 13 Practice and Procedure* § 5:41(2022)). *See In re Sanders*, 521 B.R. at 744 ("[Section 1322(c)(2)] has been interpreted to apply to both mortgages that mature post-petition and mortgages that matured or ballooned prior to the petition date."); *In re Collier-Abbott*, 616 B.R. 117, 122 (Bankr. E.D. Cali. 2020) (citing 8 Collier on Bankruptcy, ¶ 1322.17 (16th ed.)).

[23] *See, e.g.*, *Mission Hen LLC v. Lee (In re Lee)*, No. CC-22-1250, 2023 WL 7489928 (9th Cir. BAP Nov. 13, 2023); *In re Hubbell*, 496 B.R. 784 (Bankr. E.D.N.C. 2013); *Geller v. Grijalva (In re Grijalva)*, No. 4:11-25386, 2012 WL 1110291 (Bankr. D. Ariz. Apr. 2, 2012). *See also, e.g.*, *In re Godwyn*, 651 B.R. 669 (Bankr. E.D.N.C. 2023).

[24] "The phrase 'allowed secured claim[s]' is a reference to 11 U.S.C. § 506(a), which has been interpreted as providing that 'a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *In re Paschen*, 296 F.3d at 1206 (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238-39 (1989)).

[25] *In re Paschen*, 296 F.3d at 1205-06.

[26] *Hurlburt*, 925 F.3d at 159 (quoting *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 956-57 (1997)).

[27] *Id.* (quoting *Rash*, 520 U.S. at 957).

mortgage—one in which the last contractual payment is due August 1, 2028, and thus within the life of the plan—the narrow exception of § 1322(c)(2) is applicable.

Nonetheless, Debtors have not shown that the Plan complies with the requirements of § 1325(a)(5). The Bank has not accepted the Plan pursuant to § 1325(a)(5)(A) and the Bristow Property has not been surrendered to the Bank pursuant to (a)(5)(C). Compliance with § 1325(a)(5)(B) would require Debtors to pay the Claim in full, with interest at a rate of 6.50%, within the life of the Plan. The terms of the Plan provide monthly payments of $2,219.84, plus payments of $400.00 per month for a period of twenty-four months, then $481.26 per month for an additional thirty-six months, for a total amount of approximately $160,115.76. Thus, the Plan does not satisfy the requirement to pay the Bank's claim of $207,805.19 in full. As the Trustee asserts in his amended objection, to pay the Claim in full over the life of the Plan in accordance with § 1325(a)(5), the monthly payments to the Bank would need to be in excess of $4,000.00 per month. As such, the Plan does not satisfy the requirements of § 1325(a)(5). Therefore, the Court cannot confirm Debtors' Fifth Amended Plan.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that confirmation of Debtors' Fifth Amended Chapter 13 Plan, at ECF No. 63, is DENIED. This ruling is without prejudice to Debtors seeking to modify the Plan consistent with the holdings of this Order, within thirty days of the entry of the Order. If no modifications are made, the case will be dismissed.

DATED this 29th day of July, 2026.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

6